AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of Oregon

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

The persons of Pheng Lee and Chou Chang, and five
vehicles as described in Attachment A

)
)
)
)
)
)

Case No.  6:18-mc- 912

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
The persons of Pheng Lee and Chou Chang, and five vehicles as described further in Attachment A, which is attached and incorporated herein.

located in the _____ District of _____Oregon_____ , there is now concealed *(identify the person or describe the property to be seized)*:
The information and items set forth in Attachment B, which is attached and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Manufacture, distribution, and possession with intent to distribute marijuana, and conspiracy to do the same |

The application is based on these facts:
See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Sean Cummings, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/3/18__

_____
*Judge's signature*

City and state: Eugene, Oregon

Mustafa T. Kasubhai, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:        AFFIDAVIT OF SEAN CUMMINGS

### Affidavit in Support of an Application
### Under Rule 41 for a Search Warrant

I, Sean Cummings, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since 1999.  My current assignment is at the Eugene, Oregon resident Office.   My training and experience includes completion of DEA basic training.   This training included the investigation, detection, and identification of controlled substances.   I have also completed Conspiracy and Complex Investigations training.   Additionally, I have participated in numerous narcotics investigations since my employment with the DEA as a case agent, undercover agent, and surveillance agent.   I have consulted and conversed with numerous other agents from various local, state, and federal agencies on drug cases of all types including the distribution of marijuana, cocaine, and methamphetamine.   As a result of this and my own experience and training, I am familiar with marijuana, cocaine, and methamphetamine and the methods employed by traffickers of these narcotics.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at;

(1) 1810 Eakin Road Azalea, Douglas County, Oregon;

(2) 1860 Eakin Road Azalea, Douglas County, Oregon;

(3) 199 Brady Hill Lane, Azalea, Douglas County, Oregon; and

(4) 17116, 17138 and 17141 Dixonville Road, Roseburg, Douglas County, Oregon (hereinafter "Premises"), and to search the persons of Pheng Lee and Chou Chang (hereinafter "Persons"), and to search the following five vehicles:

(1)     Oregon license 686KLM, a 2005 maroon Subaru Baja registered to Pheng Lee and Maivang Xiong;

(2)     Oregon license 437JLN, a 2004 silver Hyundai XG Sedan registered to Pheng Lee and Maivang Xiong;

(3)     Oregon license 770JAS, a 2001 black Chevrolet Silverado pickup registered to Pheng Lee;

(4)     Minnesota license 707WCB, a 2011 silver Ford F150 pickup registered to Maita Lee, who is listed as a relative of Pheng Lee per Wisconsin reports;

(5)     Minnesota license 900WGB, a 2002 silver Toyota Tundra pickup registered to Tou Pao Khang, who I believe to be Chou Chang's relative;

(hereinafter "Vehicles"), as described more fully below and in the Attachment A for each warrant, for evidence, contraband, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, manufacture, distribution, and possession with the intent to distribute marijuana, and conspiracy and/or attempt to do the same.   As set forth below, I have probable cause to believe that such property and items, as described in Attachment B hereto, including any digital devices or electronic storage media, are currently located at the above listed Premises, on the above-listed Persons, and in the above-listed Vehicles.

3.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.   The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation,

communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.    Statements of individuals are set forth in substance and are not intended to be direct quotes unless so listed.

## Applicable Law

4.        Title 21, United States Code, Section 841(a)(1), prohibits the manufacture, distribution, and possession with the intent to distribute marijuana.    Title 21, United States Code, Section 846, prohibits conspiring or attempting to commit a violation of 21 U.S.C. § 841.

## Statement of Probable Cause[1]

5.        As part of this investigation, I have worked with Douglas Interagency Narcotics Team Detective Daniel Wells, who is very familiar with the events and circumstances of the investigation.    Det. Wells has prepared a summary of the probable cause for the search of the Premises, Persons and Vehicles listed above, and I adopt his summary and it is set forth below as

---

[1]   Based on my training and experience, I use the following technical terms to convey the following meanings:

a.        *IP address*.    The Internet Protocol address (or simply "IP address") is a unique numeric address used by digital devices on the Internet.    Every digital device attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that digital device may be directed properly from its source to its destination.    Most Internet service providers control a range of IP addresses.    Some digital devices have static—that is, long-term—IP addresses, while other digital devices have dynamic—that is, frequently changed—IP addresses.

b.        *Internet*.    The Internet is a global network of digital devices that communicate with each other.    Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c.        *Storage medium*.    A storage medium is any physical object upon which data can be recorded.    Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

written by him.   I received this from Det. Wells on October 3, 2018.

**The section written by Det. Wells immediately follows:**

      6.      I am a Detective employed by the Oregon State Police (OSP) and currently assigned to the Douglas County Interagency Narcotics Team (DINT), which has a primary responsibility investigating controlled substance offenses in Douglas County, Oregon.   I have been employed by OSP for over 11 years and assigned to DINT for over three years.

      7.      Prior to being hired as an Oregon State Trooper, I obtained a Bachelor of Arts Degree in Law Enforcement from Western Oregon University in June of 2007.   I was hired in July of 2007 and currently hold a Basic Certification from the Oregon Department of Public Safety Standards and Training (DPSST).

      8.      During my employment as an Oregon State Trooper, I have been trained in all facets of law enforcement and have had on the job experience related to the investigation and identification of narcotics and narcotic related crimes involving but not limited to methamphetamine, marijuana, heroin, psilocybin mushrooms, cocaine, lysergic acid diethylamide (LSD), and MDMA (Ecstasy).   This training included the methods of use, sale, possession and manufacture of controlled substances.

      9.      My training included eight weeks of Oregon State Police specific training and 16 weeks of Basic Police training facilitated by DPSST.   This training involved classroom and field training of all phases of police investigations, including burglaries, thefts, forgeries, controlled substance offenses, and other crimes. The training included preservation of evidence, laboratory services offered by the Oregon State Police Forensic Laboratory, and the criminal code.

      10.      During my career with the Oregon State Police, I have conducted and assisted with

several narcotic investigations that have led to the seizure of marijuana, cocaine, heroin, methamphetamine, and other controlled substances. Out of these investigations, I have made numerous felony drug arrests. These arrests and seizures have ranged in quantity and weights.

11.     Since July 2017, I have been investigating the manufacture and distribution of marijuana by Pheng Lee, DOB XX-XX-1967, and Chou Chang, DOB XX-XX-1961.   I believe that Lee and Chang, and others acting with them or on their behalf, have been growing marijuana in Douglas County, Oregon, and transporting it to other states for distribution.   Marijuana is currently being grown on properties associated with Lee and Chang in Douglas County, Oregon. This affidavit is in support of search warrants for properties and residences associated with them for evidence of the manufacture, distribution, and possession with intent to distribute marijuana, and the conspiracy to do the same.

12.     Pheng Lee is associated with four addresses:

o   1810 Eakin Road, Azalea, Oregon

o   1860 Eakin Road, Azalea, Oregon

o   199 Brady Hill Lane, Azalea, Oregon

o   795 N. Frontage Road, Wolf Creek, Oregon

13.     Approximately eighty-one marijuana plants are being grown at the 1860 Eakin Road property, approximately forty-eight marijuana plants are being grown at the 199 Brady Hill property, and marijuana plants are being grown at the 795 N. Frontage Road property.

14.     Chou Chang is associated with four addresses, three of which are located on the same property:

o   17116, 17138 and 17142 Dixonville Road, Roseburg, Oregon

**Page 5 – Affidavit of Sean Cummings**          **USAO Version Rev. April 2017**

o   795 N. Frontage Road, Wolf Creek, Oregon

15.     Approximately one hundred and fifty-five marijuana plants are being grown in three separate plots at the Dixonville Road properties, and marijuana plants are being grown at the 795 N. Frontage Road property.   While both Lee and Chang list 795 N. Frontage Road with Oregon DMV, I do not have sufficient current information regarding their ties to the property, and I am not requesting a search warrant for 795 N. Frontage Road.

16.     Lee has been described as the patriarch of the family, and Chang is believed to be Lee's relative.   Also discussed in this affidavit are Source of Information 1 (SOI 1), who admitted to transporting marijuana from Oregon to other states for Pheng Lee; Tom Lee a relative of Pheng Lee who admitted to selling marijuana in another state on behalf of Pheng Lee; and Tou Pao Khang, who lives on an adjacent property to one of Lee's properties and who may be Chou's brother.

A summary of information learned during the investigation follows below and includes incidents that occurred in Oregon, North Dakota, Minnesota and Wisconsin.

## 2017

### Dixonville Road Marijuana Grows-Chou Chang

17.     On July 17, 2017, the Douglas Interagency Narcotics Team (DINT) received information from a citizen whom wishes to remain anonymous.   The citizen reported seeing marijuana at the property of 17138 Dixonville Road, Roseburg, Oregon, that there was an Asian male at the property, and that his vehicle had California license plates.   I later drove past 17138 Dixonville Road and observed what I knew to be marijuana plants on the property.

18.     On or about October 3, 2017, Special Deputy Dave Baldwin (who is assigned to DINT) conducted a marijuana spotting flight.   During the flight, Special Deputy Baldwin flew over the property located at 17138 Dixonville Road and photographed the marijuana grow, which consisted of three plots.   Special Deputy Baldwin later reviewed these photographs and counted approximately 143 marijuana plants.   Special Deputy Baldwin told me he has attended training regarding marijuana spotting and has successfully spotted thousands of marijuana plants during his career.   Based upon his experience, Special Deputy Baldwin knew the plants were marijuana based upon their size, shape, color and orientation.

19.     Special Deputy Baldwin provided me the aerial photographs and pointed out the marijuana plants to me.   I also believed the plants in the photographs are marijuana based upon my experience investigating marijuana grows in the past.   I have participated in approximately 25 marijuana eradications and/or search warrants in my career.   I have participated in investigations related to indoor marijuana grows and outdoor marijuana grows both on privately owned land and public land.   During those investigations, I have on numerous occasions spotted marijuana plants from various vantages or distances and then later confirmed they were marijuana on the subsequent eradications, although I have not been to a certification course for spotting marijuana plants.   Based upon my training and experience, I am familiar with the way marijuana is grown, harvested, packaged, sold and used.

20.     During the following months, I researched the 17138 Dixonville Road property and worked with representatives from the Oregon Medical Marijuana Program (OMMP).   I learned at least one of the residences on the Dixonville property was a registered OMMP grow site.   While I do not recall the specific number of cards registered to the property, I know the

number of plants at the property exceeded the amount they were allotted to grow at that time. Thus, the marijuana grow was not in compliance per OMMP guidelines and state law in 2017. No enforcement action was taken.

21.     On September 27, 2017, DINT served an apparently unrelated search warrant related to an illegal outdoor marijuana grow in Canyonville, Oregon.   The property which the grow was located on was owned by the same people who owned, and still own, the property at 17138 Dixonville Road.

22.     On November 28, 2017, Special Deputy Baldwin and I Interviewed one of the land owners regarding the search warrant at his Canyonville property, and we briefly discussed the 17138 Dixonville Road property.   The land owner told me the renter of the Dixonville property was named "Chou," that he came from either Minnesota or Wisconsin, and that "Chou" was a medical marijuana grower.

### Minnesota Traffic Stop on Chou Chang

23.     On November 23, 2017, Chou Chang, DOB XX-X-1961, was stopped while driving in Minnesota.   Approximately 115 pounds of marijuana, packaged in 115 heat sealed packages, was seized from his vehicle.   Chang's Oregon drivers license listed an address of 795 N Frontage Rd, Wolf Creek, Oregon, and found in his vehicle was a document which listed "Chou Chang" with an address of 17138 Dixonville Road, Roseburg, OR 97470-9311.   Chang, who said he lived in Oregon and was traveling to visit someone, was arrested.   Chang's CCH does not show a conviction for this arrest.

24.     Chang's phones were searched, and found was a picture of Chang standing next to what appeared to be large marijuana plants, sent pictures of marijuana leaves/clippings and

marijuana buds, and a sent photograph of a large quantity of processed marijuana on a tarp. Received photographs included pictures of marijuana and marijuana growing material.

25.    On February 8, 2018, I showed the Oregon DMV photo of Chang to the landlord of the property at 17138 Dixonville Road, and he confirmed that Chou Chang was the renter of the Dixonville property.

## 2018

### North Dakota Traffic Stop on SOI 1

26.    On February 15, 2018 in North Dakota, a Trooper conducted a traffic stop on Interstate 94 of a Chevrolet pickup with Oregon license plate 760JWF.  The vehicle was registered to Pheng Lee, DOB XX-XX-1967, and the vehicle's registered address was 1810 Eakin Rd, Azalea, OR 97410.   The vehicle passenger was a male who I will refer to as hereafter as SOI 1, and was driven by a female associate/significant other of SOI 1.

27.    A search of the vehicle was conducted which yielded $7,152.00 cash, approximately 165 grams of marijuana, methamphetamine paraphernalia, and multiple baggies containing an unknown quantity of a white crystalline substance.   SOI 1 told law enforcement that the pickup truck they were in belonged to his boss, "Mr. Lee," and that he received $6,000 to drive a "box truck" from Oregon to St. Paul for Mr. Lee.   On February 17, 2018, SOI 1 recanted the statement about driving the "box truck" and said they had driven the white pickup (that they were stopped in).   SOI 1 said that he and the female with him had made several (similar) trips, and that they drove for Lee because they were homeless and needed the money.

28.    SOI 1 spoke again with law enforcement on February 28, 2018.  Present was St. Croix County Sheriff's Office Deputy Michael O'Keefe, from Wisconsin.   Deputy O'Keefe was

investigating Pheng Lee and others for distributing marijuana in Wisconsin.

29.     SOI 1 said that: He went to Oregon to get "medical" (marijuana) and was

eventually introduced to Pheng Lee.   Lee offered to pay for SOI 1's doctor appointment to get

his medical marijuana card and in turn, SOI 1 would list Lee as his medical marijuana grower.

Lee told SOI 1 that if he did this, Lee would provide him with three pounds of marijuana from

each harvest (two harvests per year).

30.     Lee told SOI 1 he owns two farms in Oregon, two farms in Wisconsin and a

property in Minnesota.   SOI 1 had been to one of Pheng's properties where he grows marijuana

(it is not specified which one).   SOI 1 said one of Lee's Oregon properties is in "Azealea"

(Azalea) and that the other one was in Wolf Creek or "Grantsburg" (there is no "Grantsburg",

Oregon, the reference may have been to Grants Pass or Roseburg).

31.     Around November 2017, SOI 1 and his female associate met with Lee in

Canyonville, Oregon.   During this meeting, Lee gave them one pound of marijuana and the two

agreed to transport marijuana to Lee's ranch in Minnesota for $5,000.   Shortly after, Lee gave

SOI 1 the white Chevrolet pickup that he ultimately was arrested in.   SOI 1 argued with Lee

regarding the route to be taken during the transport and Lee told SOI 1 he had been doing this for

15 years.

32.     During the trip (transporting marijuana) in January of 2018, Lee provided them

with methamphetamine and pipes after he told Lee they needed to stop and rest (from driving).

Lee paid him and the female $5,000 cash in St. Paul (Minnesota) for transporting the marijuana.

Lee and one of Lee's brothers followed them during the transport in a separate vehicle.   Lee

provided him with two to three grams of methamphetamine the next day (after delivering the

marijuana).

33.    For the second trip (after which they were arrested while returning) SOI 1 demanded $10,000 from Lee for the transport.    Lee gave him an "8-ball" (about 3.5 grams) of methamphetamine, a pipe and $1,500 cash for the second trip.    Lee delivered the white Chevrolet pickup loaded with marijuana to him at a residence in Riddle (Douglas County), Oregon.    Lee again followed him during this trip.    SOI 1 and the female delivered the marijuana to Lee's ranch "past St. Paul," and received additional payments of $8,000 and $500. SOI 1 described and drew a sketch of Lee's property on paper, and Deputy O'Keefe stated the description and drawing was consistent with the property at 2459 20th Ave (where they served the first search warrant described below and recovered approximately 35 pounds of marijuana).

34.    Law enforcement obtained records and information relating to the travel of Lee, SOI 1 and his female associate, including records from SOI 1's phone, hotel records, and talking with hotel staff.    This information corroborated SOI 1's statement that Pheng Lee rented a hotel room for him and his female associate on the trip to/from delivering marijuana.    Records showed that Pheng Lee, SOI 1 and his female associate all stayed overnight at America's Best Value Inn (Royal Inn) located at 521 E Front St, Battle Mountain, Nevada, on February 8, 2018. Lee booked two rooms through 'Booking.com using a Visa card, and he checked in and provided his Oregon driver license.    Lee provided a home address of 199 Brady Hill Lane, Wolf Creek, OR 97407 (199 Brady Hill Lane is in Azalea Oregon, and 795 Frontage Road is in Wolf Creek Oregon).    Lee provided Booking.com the address of 795 N Frontage Rd, Wolf Creek, OR 97497.

35.    The search of SOI 1's cell phone revealed text messages with a contact saved as

"Pheng," including messages that appear to be from SOI 1 driving on the trip from Oregon to Wisconsin, after which he was arrested.   One message from Pheng to SOI 1, dated February 9, 2018, was "Yes I stay behind you so no one see your plate. Your job is drive straight and stay on speed".

36.     The message below was sent by SOI 1 to another person:

"We have no choice for driving this truck we're in the middle of nowhere and there's 400 pounds of weed in the back where we going to do jus break off in split.   He informed us he's taking us out to his private farm so if you don't hear from us well probably cuz we're dead.   We were supposed to drop the truck off in the city and now he's got us going up into who knows where do his."

37.     SOI 1 has a very lengthy criminal history, with numerous convictions in multiple states and going back to at least 1990.   His criminal history is difficult to determine given its length, the presence of probation/parole violations and periods of incarceration, and the way different states report offenses, but it appears that his convictions include: delivery of methamphetamine, assault with intent to cause serious injury, multiple counts of petty theft, burglary in the second degree, felony transport of a controlled substance, narcotic addiction, driving under the influence of intoxicants, multiple felony and misdemeanor counts of possession of a controlled substance and related drug offenses, felony forgery, escape by one charged/convicted of a misdemeanor, felony possession with intent to deliver, destruction of evidence, possession of drug paraphernalia, and numerous arrests for other offense which include failure to appear and crimes of violence.

38.     I spoke with the person who prosecuted SOI 1 in North Dakota, and was told that SOI 1 received consideration for his cooperation, that his charge was reduced from a B to a C felony, and that instead of a mandatory minimum sentence of four years in prison he received a sentence of 18 months' probation and 34 days of county jail time.

### Wisconsin Investigation of Marijuana Distribution:

39.     Wisconsin Deputy O'Keefe told me that as a result of the North Dakota traffic stop of SOI 1, he applied for and was granted a search warrant for a property located at 2459 20th Ave in Eau Galle Township, St. Croix County, Wisconsin.   Per land tax records from 2017, this property is owned by Pheng Lee and Chou Chang.   The following are some of the items found during the search warrant:

- o  35 vacuum sealed packages of marijuana (field test positive for THC).   The approximate gross weight of the packages was 37.8 pounds (approximate one pound packages).

- o  258 empty vacuum sealed bags that had been cut open.   123 of these bags had hand written labels that were consistent with different strains of marijuana.

- o  A 9mm handgun that returned as stolen via the National Crime Information Center (NCIC).

40.     Information obtained during the search warrant at 2459 20th Ave led investigators to conduct a "knock and talk," and ultimately a search warrant, at 2332 10th Ave, Eau Galle Township, St. Croix County, Wisconsin, which is owned by Maita Lee, who according to a law enforcement database is a relative of Pheng Lee.   These two properties are less than one mile apart.   Located at the residence of 2332 10th Ave were 224 individual bags of marijuana with a

gross weight of approximately 250 pounds, and one or more of which field tested positive for THC. A Hi-point 9mm assault rifle listed as stolen in NCIC was also located.

41. Law enforcement contacted and interviewed an adult male at the residence, Tom Lee, DOB XX-XX-1992. Tom Lee told law enforcement that Pheng Lee is his uncle, that the marijuana at the residence belonged to his uncle, and that Tom Lee sells marijuana for his uncle at a price of $900 per pound for people who buy "lots" (of marijuana). Tom Lee said that a friend of his uncle would come to the residence to pick up money from the marijuana sales. Tom Lee identified a photograph of Pheng Lee as his uncle, and said that he had been told by his uncle to go to the residence around February 10 or 11, 2018. There were messages in Tom Lee's phone with a person with a Facebook profile of "Pheng Moua," and the messages were consistent with Tom Lee supplying Pheng Moua marijuana, not distributing it for him. I spoke with Deputy O'Keefe in Wisconsin, and he said that Pheng Moua is a younger male, and a different person than Pheng Lee.

42. A review of Tom Lee's criminal history shows a September 7, 2018 felony conviction in St. Croix County, Wisconsin, for "Possess w/ Intent-THC (>10,000g)." I am unaware if Tom Lee received any consideration for the information he provided, which he provided prior to being arrested.

**Current Activity**

## Dixonville Road Property

**Marijuana on Property**

43.    On September 18, 2018, I participated in a flight in Douglas County, Oregon. The purpose of this flight was to obtain aerial photographs of the marijuana plants on the properties related to this investigation. While flying over 17116, 17138 and 17142 Dixonville Road, I observed and photographed three plots of marijuana very similar to the grow configuration observed in 2017.   I later counted the plants in the photograph and counted approximately **155 marijuana plants**.   I could also see a large greenhouse on the property that contained marijuana plants but was unable to count the plants inside the greenhouse.     Later, DINT detectives photographed the plants while standing on a neighboring property.   I reviewed the photographs and identified the plants as marijuana.

44.    Special Deputy Baldwin has reviewed photographs of the plants from the Dixonville property, and he also identified them as marijuana.



(17116, 17138 and 17142 Dixonville Road, Roseburg, Oregon)

45.     Additionally, in September 2018, I spoke with a person, by an seller carried

contract, is selling the Dixonville property to the owner (who is then renting it to Chou Chang).

This person went to the Dixonville property to inspect it in August of 2018, and took

photographs/video of marijuana plants on the property, which I observed.    This person also

reported seeing an unknown number of marijuana plants in the barn, but did not enter the barn.

**Chou Chang is Associated with the Dixonville Property**

46.     As discussed above, on February 8, 2018 the owner of the Dixonville property

confirmed that Chou Chang rents the property, and Chang had a document in his car he was

**Page 16 – Affidavit of Sean Cummings**               **USAO Version Rev. April 2017**

driving listing the 17138 Dixonville Road, Roseburg, OR 97470-9311 address when he was stopped in Minnesota on November 23, 2017.   On September 28, 2018, a representative of the Oregon Medical Marijuana Program (OMMP) said that 17116 Dixonville Road was a listed grow site for Chou Chang.

47.    On August 10, 2018, while conducting surveillance of 17138 Dixonville Road, I observed a vehicle traveling along the driveway of the property.   The vehicle stopped at the end of the driveway near the intersection of Dixonville Road, and I observed who I believe to be Chou Chang exit the vehicle from the right front seat.   Chang walked over to the mail box near the driveway, then got back into the vehicle and it proceeded north on Dixonville Road.   A Minnesota license plate was affixed to the vehicle Chang was riding in.   During this surveillance, I observed three addresses affixed to a fence post near the driveway I observed Chang on: 17116, 17138 and 17142.   A surveillance camera also records vehicle traffic to and from the property.

**OMMP Information**

48.    Throughout this investigation I have frequently inquired with OMMP representatives about the number of OMMP cards assigned to the suspect grow sites.   I know from experience that OMMP usually has a delay or "backlog" in uploading information into their database, and so over the course of several calls the information OMMP provided changed, presumably as patients are added or removed.   The listed plant count is based on the most recent information, including from a call more recent than the one listed below but the information stayed the same.   The most current information is as follows (each card allows for six mature marijuana plants):

**Page 17 – Affidavit of Sean Cummings**            **USAO Version Rev. April 2017**

- 17116 Dixonville Road, Roseburg, Oregon:

  - On 09/19/18 I was advised by OMMP that this address was a grow site for eight cards (48 plants).

  - On 09/21/18 I was advised by OMMP that this address was a grow site for nine cards*.

  - On 09/25/18 I was advised by OMMP that this address was a grow site for 11 cards*.  I spoke further with members from the OMMP regarding the number of plants allowed on the property under state law, and was advised 17116 Dixonville Road was not a "grandfathered" grow site, so that the maximum number of marijuana plants is 48.   OMMP representatives informed me they do not limit the amount of cards issued to a particular grow site, but that the grow site is limited by the maximum number of plants (48).

- 17138 Dixonville Road, Roseburg, Oregon:

  - On 09/19/18, 09/21/18 and 09/25/18 I was advised by OMMP that this address was a grow site for six cards (36 plants).

- 17142 Dixonville Road, Roseburg, Oregon:

  - On 09/19/18 and 09/21/18 I was advised by OMMP that this address was a grow site for six cards (36 plants).

  - On 09/25/18 I was advised by OMMP that this address was a grow site for seven cards (42 plants).

**Assessor's Office Information**

    49.    I have spoken with representatives from the Douglas County, Oregon, Tax

Assessor's Office, obtained information from their website, and spoken with a former law enforcement officer who previously resided at the property. I learned that the Dixonville Road property consists of five tax lots and three addresses (17116, 17138 and 17142 Dixonville Road) totaling 489.64 acres of land. There are two residences on the property, with the addresses of 17138 and 17142 Dixonville Road. The 17116 address was assigned to 109.9 acres of the property after a parcel partition in 1998, and there is no residence at this address. I have also spoken to a member of the family who sold the property to the current owners under a 10-year owner-carry contract, and have spoken to the current owners as well.



(Dixonville Road properties map)

**Page 19 – Affidavit of Sean Cummings**          **USAO Version Rev. April 2017**

### 199 Brady Hill Lane, Azalea, Oregon

**Marijuana on Property**

      50.     While flying over 199 Brady Hill Lane, I observed and photographed one plot of large marijuana plants.   I later counted the plants in the photograph and observed approximately **48 marijuana plants**.   I also observed and photographed a large marijuana grow on the property of 301 Brady Hill Lane.   I later counted the plants in the photograph and observed approximately **51 marijuana plants**.   Utilizing Google Earth and the aerial photographs, I estimated the two grows (199 and 301 Brady Hill Lane) are less than 100 yards apart.   Both properties are visible in the photograph below, and 199 Brady Hill, with the square shaped grow site is the property located on the lower part of the photograph.

      51.     Special Deputy Baldwin has reviewed photographs of the plants from the 199 and 301 Brady Hill Lane property, and he also identified them as marijuana.



(199 and 301 Brady Hill Road, Azalea, Oregon)

## Pheng Lee is Associated with the 199 Brady Hill Property

52.     199 Brady Hill Lane, Azalea, Oregon, is one of the addresses Pheng Lee lists with

Oregon DMV.   The owner of 199 Brady Hill Lane also owns 301 Brady Hill Lane.   On

September 28, 2018, a representative of OMMP said that Pheng Lee lists 199 Brady Hill road as

his grow site.   During surveillance of the residence of 199 Brady Hill on September 25, 2018,

law enforcement officers saw a maroon Subaru Baja with Oregon license 686KLM at the

property.   The Baja is registered to Pheng Lee and Miavang Xiong, who I believe to be Pheng

**Page 21 – Affidavit of Sean Cummings**                    **USAO Version Rev. April 2017**

Lee's wife.

53.     On September 25, 2018, I drove past the residence of 199 Brady Hill Lane, and in the driveway I observed and photographed a maroon Subaru Baja and a silver sedan.    I believe the Subaru Baja to be the same one described above, which has been observed driving past the Brady Hill property towards the Eakin Road properties, and I believe the silver Hyundai to be the same vehicle previously observed at 1810 Eakin Road.

**OMMP Information**

54.     The most current information is as follows (each card allows for six mature marijuana plants):

- 199 Brady Hill Lane, Azalea, Oregon:

    o On 09/19/18, I was advised by OMMP this address was a grow site for seven cards (42 plants).

    o  On 09/21/18, I was advised by OMMP this address was a grow site for eight cards (48 plants).

    o  On 09/25/18, I was advised by OMMP that this address was a grow site for seven cards (42 plants).

    o On 10/03/18, I was advised by OMMP that this address was a grow site for seven cards (42 plants).

**Assessor's Office Information**

55.     Utilizing information from the Douglas County, Oregon, Tax Assessor's website and Douglas County Cartography map, I learned that the 14.5 acre property of 199 Brady Hill Lane in Azalea, and the neighboring 14.4 acre property of 301 Brady Hill Lane, are owned by

the same owners.   I believe the owners reside at 301 Brady Hill Lane.

## Eakin Road Properties

56.  Below is a recent photograph of 1810 and 1860 Eakin Road.   1810 Eakin Road is

the property and residence to the lower left of the photograph, and 1860 Eakin Road is the

property towards the upper part of the photograph with marijuana plants growing in rows.



**Marijuana on Property**

57.    While flying over Eakin Road, I did not observe any marijuana plants at the property

associated with 1810 Eakin Road.    On the property located at 1860 Eakin Road I observed and

photographed a large marijuana grow.    I later counted the plants on the photograph and counted

approximately **81 marijuana plants**.    Also at 1860 Eakin Road, there is a partially open

greenhouse that contains what appears to be at least one additional marijuana plant, but the

contents of the greenhouse are only partially visible.

58.    Special Deputy Baldwin has reviewed photographs of the plants from the 1860

Eakin Road property, and he also identified them as marijuana.

Utilizing Google Earth, the Douglas County Tax Assessor's website, the map from Douglas

County Cartography and the aerial photographs I took on September 18, 2018, it is clear the

marijuana plants are located on the property of 1860 Eakin Road.



(1860 Eakin Road, Azalea, Oregon)

**Pheng Lee is Associated with 1810 and 1860 Eakin Road**

<u>1810 Eakin Road</u>

59.     1810 Eakin Road, Azalea, Oregon, is one of the listed addresses for Pheng Lee with his Oregon DMV driver record.   On October 2, 2018, DINT detectives drove by the residence at 1810 Eakin Road and saw a maroon Subaru Baja with Oregon license 686KLM at the property.   The Baja is registered to Pheng Lee and Maivang Xiong, who I believe to be his wife.   Additionally, the Chevrolet pickup with Oregon license plate 760JWF, which SOI 1 was stopped driving in North Dakota in February 2018, was registered to Pheng Lee at 1810 Eakin Rd, Azalea, OR 97410.

60.     Previously, on March 7, 2018, DEA SA Sean Cummings and I drove down Eakin Road, and parked at the residence 1810 Eakin Road we saw two vehicles.   One vehicle was a black Chevrolet pickup bearing Oregon license 770JAS, registered to Sheng Lee (DOB XX-XX-1966) at the address of 17138 Dixonville Road, Roseburg, Oregon 97470.   The other vehicle was a silver Hyundai sedan bearing Oregon license 437JLN, registered to a female in Salem, Oregon.

61.     I checked the vehicles again on September 24, 2018, and the registered owner of the Chevrolet pickup bearing Oregon license 770JAS is now listed as Pheng Lee at the address of 1810 Eakin Road, Azalea, OR 97410.   The registered owners of the Hyundai are now listed as Pheng Lee and Maivang Xiong, DOB XX-XX-1972, at the address of 1810 Eakin Road, Azalea, OR 97410.

<u>1860 Eakin Road</u>

62.     As described further below, I believe Pheng Lee, and a relative or associate of his are connected to the property at 1860 Eakin Road, and are using it to manufacture marijuana. I believe that Lee's car was at 1860 Eakin Road on September 18, 2018. I flew over 1860 Eakin Road on September 18, 2018, at approximately 4:21 p.m., and took photographs.

63.     While reviewing the photographs I took during the flight, I observed a small maroon vehicle parked at the marijuana grow located at 1860 Eakin Road. The vehicle had the tailgate down and green items are visible in the back. (See photograph below)



(September 18, 2018 photograph of maroon vehicle at 1860 Eakin Road)

64.     I later reviewed road surveillance camera footage from the camera on Eakin road.

The camera was installed in May 2018, and it is located to the southwest of the 1810 and 1860

Eakin Road properties, and I observed the following photographs taken on September 18, 2018:

•        1:10 p.m., a maroon Subaru   Baja, Oregon license 686KLM (registered to Pheng Lee)
traveling towards 1810 and 1860 Eakin Road.



(maroon Subaru on Eakin Road at 1:10 p.m.)

•        2:03 p.m., the same Subaru Baja traveling away from/in the opposite direction of 1810
and 1860 Eakin Road, with the tailgate down and green items in back.



• 4:02 p.m., the Subaru Baja traveling towards 1810 and 1860 Eakin Road.

• 6:38 p.m., the Subaru Baja traveling away from/in the opposite direction of 1810 and 1860 Eakin Road.

### Tou Pao Khang and 1860 Eakin Road

65. On March 7, 2018, DEA SA Sean Cummings and I drove past 1860 Eakin Road, Azalea, Oregon, and parked on the driveway of 1860 Eakin Road was a Toyota Tundra pickup bearing Minnesota license 900WGB, which was registered to Tou Pao Khang and Nhia Doua Khang at the address of 2723 Girrard Ave N, Minneapolis, Minnesota 55411. I checked the vehicle again on September 24, 2018, and the Toyota with the Minnesota plate was now registered only to Tou Pao Khang. During a February 2018 conversation I had with the owner of the Dixonville Road property that Chou Chang rents, he told me about Chou Chang's brother,

who he referred to and spelled his name as "Tou." The owner told me that Tou was looking for a property to rent.

66.     A public records search for Tou Pao Khang shows a September 3, 2017 listing of the address of 17138 Dixonville Rd, Roseburg, Oregon, and it appears to be a listing from a credit bureau.     I believe that Tou Pao Khang is associated with Pheng Lee and Chau Chang.

67.     Further, in addition to the close proximity between 1860 Eakin Road, 1810 Eakin Road and 199 Brady Hill Lane (both Eakin Road properties are within a mile of 199 Brady Hill Lane), the structure around many of the marijuana plants at 1860 Eakin Road and 199 Brady Hill Lane appear similar, although the size of the plants is different and 199 Brady Hill is more neatly laid out. Photographs are below.




(199 Brady Hill Lane)                    (1860 Eakin Road)

68.     Finally, on September 27, 2018, I spoke with DINT Special Deputy Williamson. Special Deputy Williamson told me he has reviewed the camera footage from both the Eakin Road and Dixonville Road cameras, and he said that least five different vehicles are seen on both Eakin Road and Dixonville Road (the same vehicles appear at both locations).

**OMMP Information**

69.     The most current information is as follows (each card allows for six mature

marijuana plants):

- 1810 Eakin Road, Azalea, Oregon:

    o   Per OMMP this address is not currently a grow site (as of 10/03/18).

- 1860 Eakin Road, Azalea, Oregon:

    o   Per OMMP this address is not in their database (as of 10/03/18).

**Assessor's Office Information**

70.     Utilizing information from the Douglas County, Oregon, Tax Assessor's website,

I learned that the property of 1810 Eakin Road in Azalea is owned by a trust and consists of 10

acres; that the property of 1830 Eakin Road in Azalea is owned by a separate trust and consists

of 36.46 acres; and, that the property of 1860 Eakin Road in Azalea is owned by a well-known

marijuana grower and consists of 10 acres.

71.     I obtained a map (below) from the Douglas County Cartography Office showing

the property lines on Eakin Road.   The map indicates the properties of 1810 and 1860 Eakin

Road border each other, and to the north is 986 Creek Road in Azalea, and to the south the two

properties border Weyerhaeuser (a private timber company) land.   The driveway to 1860 Eakin

Road is marked with a sign for 1830 Eakin Road; however, based upon aerial images from

Google Earth, it is my belief there is an easement/driveway through the property of 1860 Eakin

Road to access the property of 1830 Eakin Road, and I believe this is why the driveway to access

1860 Eakin Road is marked as 1830.   The property of 1830 Eakin Road is north of 986 Creek

Road and does not share a border at all with 1810 or 1860 Eakin Road.   I do not believe 1830

**Page 32 – Affidavit of Sean Cummings**                    **USAO Version Rev. April 2017**

Eakin Road is involved with the marijuana operation under investigation, and it is clearly a separate property from 1860 Eakin Road, notwithstanding the sign on the driveway of 1860 Eakin Road.



**Anonymous Tip Regarding Pheng Lee**

72.     On October 2, 2018, I received a written tip that was sent to Minnesota law enforcement. The tip is dated September 29, 2018. While the scope of the claims in the tip are sweeping, unverifiable, and likely overstated, the tip identifies Cheu Pheng Lee as being

responsible for having marijuana plots in Siskiyou California, and for shipping marijuana from

California to Minnesota for sale, and involving Hmong individuals in the manufacture of the

marijuana.    The complete tip is attached as Exhibit 1.

73.    From talking with law enforcement, I know that Pheng Lee is a member of the

Hmong community, and that there is a property in Siskiyou California, and that Pheng Lee's

name, and the address of 199 Brady Hill Lane address, are listed with the California property.    I

also know that marijuana is currently being grown at the California property.    I have a seen an

image of a video online of Pheng Lee, and the name associated with the video is Cheu Pheng

Lee.    I believe that the person referred to in the tip is the Pheng Lee that is the subject of this

investigation.

### State Laws Regarding Marijuana

74.    Douglas County, Oregon, does not allow commercial marijuana grow sites, so

marijuana being grown in accordance with state law would either be medical or recreational.    It

is illegal under Oregon state law to export marijuana to another state.

I spoke with law enforcement officers in North Dakota, Wisconsin and Minnesota regarding

marijuana.    I learned that in Minnesota there is medical marijuana, but it is otherwise illegal to

possess and manufacture marijuana, and illegal to bring it into the state.    I learned that in

Wisconsin, other than a new law regarding CBD oil and hemp, marijuana is illegal.    I learned

that in North Dakota, there is no medical marijuana and that marijuana is illegal.

75.    The manufacture, possession and distribution of marijuana is a violation of federal

law, and I know that marijuana is a Schedule I controlled substance.

## **Vehicles**

76.     I believe there is probable cause to search the following vehicles, and that they will reveal evidence of the crimes under investigation:

> (1)     Oregon license 686KLM, a 2005 maroon Subaru Baja registered to Pheng Lee and Maivang Xiong.   This vehicle has been observed at 1810 and 1860 Eakin Road and 199 Brady Hill Lane;

> (2)     Oregon license 437JLN, a 2004 silver Hyundai XG Sedan registered to Pheng Lee and Maivang Xiong.   This vehicle has been seen at 1810 Eakin road and 199 Brady Hill Lane;

> (3)     Oregon license 770JAS, a 2001 black Chevrolet Silverado pickup registered to Pheng Lee.   This vehicle has been seen at 1810 Eakin Road and 199 Brady Hill Lane;

> (4)     Minnesota license 707WCB, a 2011 silver Ford F150 pickup registered to Maita Lee whom is listed as a relative of Pheng Lee's per Wisconsin reports.   I have observed Chou Chang in this vehicle and it has also been observed on both Eakin Road and Dixonville Road cameras.   I have also seen this vehicle at 199 Brady Hill Lane;

> (5)     Minnesota license 900WGB, a 2002 silver Toyota Tundra pickup registered to Tou Pao Khang whom I believe to be Chou Chang's relative.   I have seen this vehicle at 1860 Eakin Road.

77.     Based on the above information, and other information known to me through this investigation, I believe that Pheng Lee, Chou Chang and others are involved in the manufacture

of marijuana in Oregon and in the transport of marijuana to other states for distribution. I believe that Lee and Cheng, and other coconspirators, have been and continue to be involved in the illegal manufacture, possession with intent to distribute, and distribution of marijuana, and that the search of the properties listed below will reveal evidence of both the ongoing conspiracy, including its scope and members, as well as historical evidence of the conspiracy and of the manufacture and distribution of marijuana. According to SOI 1, Pheng Lee told him that he had been doing this for 15 years (referring to transporting marijuana), although the earliest known activity I am presently aware of in Douglas County is Chou Chang's 2017 marijuana grow in Dixonville.

78.     I am also aware that Pheng Lee used a digital device to communicate with SOI 1 regarding transporting marijuana, and that he presumably used a digital device to make a reservation for a hotel through Booking.com. I know that people involved in the manufacture and distribution of marijuana routinely use digital devices to communicate with coconspirators regarding criminal activity by email, phone calls, video calls, chats or texts, and that Pheng Lee, Chou Cheng, and other individuals involved with them would also use digital devices to map routes, reserve hotels and obtain directions when traveling, to research and/or order items online, to pay bills for cars, utilities, insurance, credit cards, phone plans, for online banking, to research growing marijuana and properties for growing marijuana. Therefore, I believe that the search of digital devices of the individuals at the properties below would reveal evidence related to the criminal activity being investigated.

79.     Accordingly, I am respectfully requesting that warrants be granted to search the property, any residence, trailers, motor homes, vehicles, greenhouses, structures, outbuildings

and vehicles, other than vehicles associated with individuals who appear to be temporary visitors

uninvolved with criminal activity-such as a delivery person or utility employee-at the properties

below:

- 1810 Eakin Road, Azalea, Oregon, 97410.

- 1860 Eakin Road, Azalea, Oregon, 97410.

- 199 Brady Hill Lane, Azalea, Oregon, 97410.

- 17116, 17138 and 17142 Dixonville Road, Roseburg, Oregon, 97470.

80.    I further seek authorization to search the persons of Pheng Lee and Chou Chang,

and the following vehicles:

- Oregon license 686KLM, a 2005 maroon Subaru Baja registered to Pheng Lee and

  Maivang Xiong;

- Oregon license 437JLN, a 2004 silver Hyundai XG Sedan registered to Pheng Lee

  and Maivang Xiong;

- Oregon license 770JAS, a 2001 black Chevrolet Silverado pickup registered to Pheng

  Lee;

- Minnesota license 707WCB, a 2011 silver Ford F150 pickup registered to Maita Lee,

  who is listed as a relative of Pheng Lee per Wisconsin reports;

- Minnesota license 900WGB, a 2002 silver Toyota Tundra pickup registered to Tou

  Pao Khang, who I believe to be Chou Chang's relative;

81.    I am not seeking authorization to search 301 Brady Hill Lane as part of this

warrant, however, so the Court is aware, based on the common factors and proximity between

**Page 37 – Affidavit of Sean Cummings**                    **USAO Version Rev. April 2017**

the marijuana grows at 199 and 301 Brady Hill, and because 301 Brady Hill is not in compliance with state law regarding marijuana, I am separately seeking a state warrant in Douglas County for 301 Brady Hill, and if granted, I intend to execute it at the same time as the other warrants should they be granted.

**This concludes the summary written by Det. Wells.**

83.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the Premises, in whatever form they are found.   One form in which the records will likely be found is data stored on a computer's hard drive, on other storage media, or other digital devices, including cell phones (hereinafter collectively referred to as digital devices).   Thus, the warrant applied for would authorize the seizure of electronic storage media or the copying of electronically stored information, all under Rule 41(e)(2)(B).

84.     There is probable cause to believe, and I do believe, that records will be stored on a digital device because, based on my knowledge, training, and experience, I know that based on information above that subjects involved in this investigation utilize text messages and cellular telephone devices to communicate with each other and the analysis of this data will assist in proving certain overt acts in the conspiracy to distribute marijuana.

a.     Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a digital device, deleted, or viewed via the Internet. Electronic files downloaded to a digital device can be stored for years at little or no cost.   Even when files have been deleted, they can be recovered months or years later using forensic tools. When a person "deletes" a file on a digital device, the data contained in the file does not actually disappear; rather, that data remains on the digital device until it is overwritten by new data.

**Page 38 – Affidavit of Sean Cummings**                    **USAO Version Rev. April 2017**

Therefore, deleted files or remnants of deleted files, may reside in free space or slack space—

that is, in space on the digital device that is not currently being used by an active file—for long

periods of time before they are overwritten.   In addition, a digital device's operating system may

also keep a record of deleted data in a "swap" or "recovery" file.

        b.     Wholly apart from user-generated files, digital devices—in particular,

internal hard drives—contain electronic evidence of how a digital device has been used, what it

has been used for, and who has used it.   To give a few examples, this forensic evidence can take

the form of operating system configurations, artifacts from operating system or application

operation, file system data structures, and virtual memory "swap" or paging files.   Digital device

users typically do not erase or delete this evidence, because special software is typically required

for that task.   However, it is technically possible to delete this information.

        c.     Similarly, files that have been viewed via the Internet are sometimes

automatically downloaded into a temporary Internet directory or "cache."

        d.     Based on actual inspection of other evidence related to this investigation,

I am aware that digital devices were used to generate, store, and print documents used in the

drug trafficking scheme.   Thus, there is reason to believe that there is a digital device currently

located on the Premises.

85.     As further described in Attachment B, this application seeks permission to locate

not only computer files that might serve as direct evidence of the crimes described on the warrant

but also for forensic electronic evidence that establishes how digital devices were used, the

purpose of their use, who used them, and when.   There is probable cause to believe that this

forensic electronic evidence will be on any digital device in the Premises, because, based on my

knowledge, training, and experience, I know:

a. Data on the digital device can provide evidence of a file that was once on the digital device but has since been deleted or edited, or of a deleted portion of a file for example text messages from cellular telephones may be obtained even after they are deleted this may prove valuable in the investigation. Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information on the digital device that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the digital device was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a digital device can also indicate who has used or controlled it. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the digital device at a relevant time. Further, forensic evidence on a digital device can show how and when it was accessed or used. Such "timeline" information allows the forensic analyst and investigators to understand the chronological context of access to the digital device, its use, and events relating to the offense under investigation. This "timeline"

information may tend to either inculpate or exculpate the user of the digital device.   Last, forensic evidence on a digital device may provide relevant insight into the user's state of mind as it relates to the offense under investigation.   For example, information on a digital device may indicate the user's motive and intent to commit a crime (e.g., relevant web searches occurring before a crime indicating a plan to commit the same), consciousness of guilt (e.g., running a "wiping program" to destroy evidence on the digital device or password protecting or encrypting such evidence in an effort to conceal it from law enforcement), or knowledge that certain information is stored on a digital device (e.g., logs indicating that the incriminating information was accessed with a particular program).

    c. A person with appropriate familiarity with how a digital device works can, after examining this forensic evidence in its proper context, draw conclusions about how digital devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device that are necessary to draw an accurate conclusion is a dynamic process.   While it is possible to specify in advance the records to be sought, electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.   Whether data stored on a digital device is evidence may depend on other information stored on the digital device and the application of knowledge about how a digital device behaves.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a digital device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is

**Page 41 – Affidavit of Sean Cummings**      **USAO Version Rev. April 2017**

not present on a digital device.   For example, the presence or absence of counter-forensic

programs or anti-virus programs (and associated data) may be relevant to establishing the user's

intent.

86.    In most cases, a thorough search of the Premises for information that might be

stored on a digital device often requires the seizure of the device and a later, off-site review

consistent with the warrant.   In lieu of removing a digital device from the Premises, it is

sometimes possible to image or copy it.   Generally speaking, imaging is the taking of a

complete electronic picture of the digital device's data, including all hidden sectors and deleted

files.   Either seizure or imaging is often necessary to ensure the accuracy and completeness of

data recorded on the digital device and to prevent the loss of the data either from accidental or

intentional destruction.   This is true because:

a.    As noted above, not all evidence takes the form of documents and files

that can be easily viewed on site.   Analyzing evidence of how a digital device has been used,

what it has been used for, and who has used it requires considerable time, and taking that much

time on premises could be unreasonable.   As explained above, because the warrant calls for

forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly

examine digital devices to obtain evidence.   Digital devices can store a large volume of

information.   Reviewing that information for things described in the warrant can take weeks or

months, depending on the volume of data stored, and would be impractical and invasive to

attempt on-site.

b.    Records sought under this warrant could be stored in a variety of formats

that may require off-site reviewing with specialized forensic tools.   Similarly, digital devices

**Page 42 – Affidavit of Sean Cummings**                    **USAO Version Rev. April 2017**

can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. . Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.   The vast array of hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.   However, taking the digital device off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

87.     Because several people may share the Premises as a residence, it is possible that the Premises will contain digital devices that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.   If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those digital devices, the warrant applied for would permit the seizure and review of those items as well.

88.     *Nature of the examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant for which I apply would permit seizing, imaging, or otherwise copying digital devices that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the device or information consistent with the warrant.   The later review may require techniques, including but not limited to computer-assisted scans of the entire device, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

89.     The initial examination of the digital device will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant.   If the government needs additional time to conduct this review, it may seek an extension of the time

period from the Court within the original 120-day period from the date of execution of the warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

90. If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the digital device do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

91. If an examination is conducted, and the digital device does not contain any data falling within the ambit of the warrant, the government will return the digital device to its owner within a reasonable period of time following the search and will seal any image of the digital device, absent further authorization from the Court.

92. The government may retain the digital device as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the digital device and/or the data contained therein.

93. The government will retain a forensic image of the digital device for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory

evidence claims where, for example, a defendant claims that the government avoided its

obligations by destroying data or returning it to a third party.

94.     The government has made the following prior efforts in other judicial fora to

obtain evidence sought under the warrant: None, although as noted above by Det. Wells, the state

is separately a search warrant on 301 Brady Hill Lane, Oregon.

### Conclusion

95.     Based on the foregoing, I have probable cause to believe, and I do believe, that

Pheng Lee and Chou Chang committed and continue to commit violations of Title 21, United

States Code, Sections 841(a)(1) and 846, manufacture, distribution, and possession with the

intent to distribute marijuana, and conspiracy and/or attempt to do the same, and that the

contraband and instrumentalities of those offenses, as described above and in Attachment B, are

presently located at the premises, on the persons and in the vehicles described above and in

Attachment A to the search warrants.   I therefore request that the Court issue four search

warrants authorizing a search of the Premises described in Attachment A for the items listed in

Attachment B and the seizure and examination of any such items found, as well as a search

warrant for the persons of Pheng Lee, Chou Chang and the five vehicles listed above and set

forth in Attachment A.

96.     Prior to being submitted to the Court, this affidavit, the accompanying

applications, and the requested search warrants were all reviewed by Assistant United States

Attorney (AUSA) Jeffery Sweet, and AUSA Sweet advised me that in his opinion the affidavit

and application are legally and factually sufficient to establish probable cause to support the

issuance of the requested warrants.

**Page 45 – Affidavit of Sean Cummings**                    **USAO Version Rev. April 2017**

**Request for Sealing**

97.     It is respectfully requested that the Court issue an order sealing, until further order

of the Court, all papers submitted in support of the requested search warrant, including the

application, this affidavit, the attachments, and the requested search warrant.   I believe that

sealing these documents is necessary because the information to be seized is relevant to an

ongoing investigation, and any disclosure of the information at this time may endanger the life or

physical safety of an individual, cause flight from prosecution, cause destruction of or tampering

with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an

investigation.   Premature disclosure of the contents of the application, this affidavit, the

attachments, and the requested search warrant may adversely affect the integrity of the

investigation.

Sean Cummings
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this _____ day of October 2018.

Mustafa T. Kasubhai
United States Magistrate Judge

**Page 46 – Affidavit of Sean Cummings**                    **USAO Version Rev. April 2017**

September 29,2018

To:     Lori Swanson , Minnesota State Attorney General

Re:     Marijuana plantation in California


Did you know that there are about 80 percent of the marijuana plantations in the State of California owned and operated by Minnesota residents currently.  These Minnesota residents particularly the Hmong community has been shown to be more involved in such cultivation. Each year marijuana is shipped from California to Minnesota especially in the Twin Cities and its suburbs by the tons for street black market sale for millions of dollars in cash.  Of these Minnesota owners, there are two individual who owned the most marijuana plots in the county of Siskiyou locates in the northern California. These two individual lead thousands of Hmong individuals and couples to grow marijuana in California and they are Paul Vang and Cheu Pheng Lee.

Paul Vang, a Maplewood resident lives at 620 McKnight Rd S in Maplewood Minnesota 55119. Paul Vang owns more than 10 individual marijuana plots at 100 marijuana plants per plots that can produce about three to four tons of marijuana each year.  Paul Vang and his wife are personally unemployment with full government aide including medical and  dental assistant but they secretly own few major business in the Twin Cities that make millions of dollars in cash in additional to the marijuana cultivation business. They own majority of the shareholder of Hmong Village at 1001 Johnson Pkwy in St. Paul and few Home Health Care business in Minnesota under other individual names.  These Minnesota businesses and those Marijuana plantations are owned and operated by individual who they hire to run the businesses. Most of his marijuana he shipped from California are kept in his house and his sister's and brother in-law at 622 McKnight Rd S across from his resident until they all sold.

Cheu Pheng Lee, a former Lao Family Community Board of Director and current Board of Trustees for the Lao Family Foundation locates at 2385 Ariel St. N Maplewood Minnesota 55109. He too owns more than 6 individual marijuana plots which can produce up to three tons of marijuana each year. He is well known by the Minnesota Attorney General during his term as Director for Lao Family Community during 2011 to 2014 which he misses used funds of the organization. He currently hosts the Hmong New Year at Excel Energy Center and July 4 festival at Como Park in St. Paul.  The profit he received from these two events are use directly for the  marijuana cultivation business and his personal use.

Please stop these two individual from the marijuana business and the flow of marijuana into the State of Minnesota and into the Twin Cities communities.


CC:     Maplewood Police Department, Minnesota

        St. Paul Police Department, Minnesota

        Siskiyou County Sherriff's Police Department in Norther California


Exhibit 1
Page 1 of 1

## ATTACHMENT A

### Persons and Vehicles to Be Searched

The person of Pheng Lee, an Asian male adult with Date of Birth of ▮▮▮▮▮ 1967.

Lee has Minnesota Drivers license number ▮▮▮▮▮. See the below photograph of Pheng

Lee.



Lee, Pheng
▮▮/1967

The person of Chou Chang, an Asian male adult with Date of Birth of ▮▮▮▮▮▮ 1961.

Chang has Minnesota drivers license number ▮▮▮▮▮▮▮▮▮▮, Oregon drivers license number

A483360. See the below photograph of Chou Chang.



Chang, Chou
▮▮▮▮/1961        A
  |              Cla:

(1) Oregon license 686KLM, a 2005 maroon Subaru Baja registered to Pheng Lee and Maivang

Xiong;

(2) Oregon license 437JLN, a 2004 silver Hyundai XG Sedan registered to Pheng Lee and

Maivang Xiong;

(3) Oregon license 770JAS, a 2001 black Chevrolet Silverado pickup registered to Pheng Lee;

(4) Minnesota license 707WCB, a 2011 silver Ford F150 pickup registered to Maita Lee

(5) Minnesota license 900WGB, a 2002 silver Toyota Tundra pickup registered to Tou Pao

Khang.

## ATTACHMENT B

### Items to Be Seized

The items to be searched for, seized, and examined, are those items on the premises, vehicles, or persons referenced in Attachment A to each search warrant, that contain evidence, contraband, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, manufacture, distribution, and possession with the intent to distribute marijuana, and conspiracy and/or attempt to do the same. The items to be seized cover the period of July 2017 through the date of the execution of the search warrant.

1.    The items referenced above to be searched for, seized, and examined are as follows:

    a) Controlled substances, specifically, all marijuana, such as marijuana plants, marijuana bud, marijuana seeds and marijuana shake, and also concentrated cannabis, cannabis edibles, Butane Honey Oil (BHO) and residue from controlled substances.

    b) Material used in the manufacture of marijuana, including material for growing marijuana from seed or starts, fertilizer, soil, tools and equipment, lights, ballasts, marijuana growing resources, charts and notes relating to growing marijuana, equipment to trim, dry, store and transport marijuana, items used to mask the odor of marijuana during transport.

    c) Drug repackaging and distribution materials, mechanical and electronic scales, calibration weights, scoops, spatulas, vials, plastic bags, and plastic wrap.

    d) Currency and other monetary instruments, U.S. currency, traveler's checks, stored-value cards and ATM (automated teller machine) cards.

e)  Drug distribution records, transaction records, ledgers, notes, photographs, videos, receipts, maps, travel documents, address books, and telephone number lists.

f)  Documents and other items which identify the users, owners, occupants, or associates of the searched property, and their assets, identification documents, bank account records, mail, receipts, account records, tax records, property ownership records, and passwords.

g)  Firearms.

h)  Vehicle keys and records, registration and ownership documents, insurance documents, and maintenance records.

i)  Storage containers capable of storing or concealing drugs, safes, firearms, or illegal proceeds, and the keys or implements used to access them.

j)  Keys to other storage locations such as warehouses, storage units, stash houses, and safe deposit boxes.

k)  Financial records including bank statements, canceled checks, deposit records, check stubs, payment ledgers, checkbook registers, deposit slips, loans, documentation of assets and liabilities, general ledgers, general journals, cash, cash receipts, cash disbursement journals, accounts receivable journals, accounts payable journals, contracts, billing information, and records of bills relating to the receipt of currency or other forms of payment.

l)  Records of credit card and automatic teller machine activity, including credit and/or debit cards, and automatic teller machine records.

m)  Job files, including contracts, agreements, proposals, invoices, bids, bid sheets, purchase orders, payment records, billing or invoicing worksheets, and job timecards.

n)  QuickBooks, Excel, Deltek, and other computer accounting files and records, including all spreadsheets relating to income, expenses, employees, workers or financial information.

o)  Ledgers, profit distribution reports, financial statements, profit and loss statements, balance sheets, income statements, or work progress reports.

p)  Bank statements, canceled checks, duplicate checks, bank deposit records, bank debits, cashier's checks and money order records, and wire transfer records.

q)  Payroll and payroll tax records including timecards, timesheets, handwritten hour summaries, payroll sheets/journals, payroll check registers, canceled payroll checks, paycheck stubs, Forms W-2, Forms W-4, Forms 941, Forms 940, and Forms 1099.

r)  Employee files, including applications for employment, background checks, contact information, hiring information, hire dates, fire dates, layoff dates, job descriptions, and job assignments.

s)  Records relating to the employment and payment of compensation including employment contracts, canceled checks for expense reimbursements, personnel files, associated health insurance, workers' compensation insurance, and/or retirement plans.

t)  Business licenses relating to marijuana, OMMP records regarding growers, patients and caregivers.

u)  Calendar books, log books, appointment books, and telephone number listings reflecting employment information, customer information, and vendor information.

v)  Documents reflecting travel expenditures to include copies of travel tickets, hotel bills, gas receipts, and copies of payment items comprising evidence of expenditures and liabilities.

w)  Copies of tax returns and related tax preparation files to include work papers, schedules, receipts, and any other source documents comprising evidence of asset acquisition, expenditures, and sources of income.

x)  Notes payable and receivable, IOUs, and other recordation of debts comprising evidence of loans and expenses.

y)  Papers, records, documents, files, notes, memos, mail, or other materials representing residency, ownership, occupancy, dominion, or control of the premises referenced above and described in Attachment A.

z)  Records or keys showing possession of safe deposit boxes, safes, storage units, and any other type of storage areas, including passwords and/or access codes for access during the searches.

aa) Correspondence and communications, whether electronic or in paper format, between Chou Chang, Pheng Lee and other co-conspirators, other employees, subcontractors, or competitors.

bb) Computers, storage media, or digital devices used as a means to commit the violations described above.

2.  As used in this attachment, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash

memory or other media that can store data) and any photographic form. The term
"computer" includes all types of electronic, magnetic, optical, electrochemical, or other
high speed data processing devices performing logical, arithmetic, or storage functions,
including desktop computers, notebook computers, mobile phones, tablets, server
computers, and network hardware. The term "storage medium" includes any physical
object upon which computer data can be recorded. Examples include hard disks, RAM,
floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

    3.    For any computer or storage medium whose seizure is otherwise authorized by
this warrant and any computer, storage medium, or digital device that contains or in which is
stored records or information that is otherwise called for by this warrant (hereinafter
"Computer"):

    a.    Evidence of who used, owned, or controlled the Computer at the time the
things described in this warrant were created, edited, or deleted, such as logs, registry
entries, configuration files, saved usernames and passwords, documents, browsing
history, user profiles, email, email contacts, "chat," instant messaging logs, photographs,
and correspondence.

    b.    Evidence of software that would allow others to control the Computer,
such as viruses, Trojan horses, and other forms of malicious software, as well as evidence
of the presence or absence of security software designed to detect malicious software.

    c.    Evidence of the lack of such malicious software.

    d.    Evidence indicating how and when the Computer was accessed or used to
determine the chronological context of computer access, use, and events relating to the

crime under investigation and to the Computer user.

     e.    Evidence indicating the Computer user's state of mind as it relates to the crime under investigation.

     f.    Evidence of the attachment to the Computer of other storage devices or similar containers for electronic evidence.

     g.    Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Computer.

     h.    Evidence of the times the Computer was used.

     i.    Passwords, encryption keys, and other access devices that may be necessary to access the Computer.

     j.    Documentation and manuals that may be necessary to access the Computer or to conduct a forensic examination of the Computer.

     k.    Records of or information about Internet Protocol addresses used by the Computer.

     l.    Records of or information about the Computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

     m.    Contextual information necessary to understand the evidence described in this attachment.

     n.    ~~During the execution of the search of the Premises described in Attachment A, law enforcement personnel are authorized to press the fingers, including~~

           **USAO Version Rev. June 2017**

thumbs, of ~~(name the individuals)~~ ~~found at the Premises to the Touch ID sensor of the~~ ~~Apple brand device(s), such as an iPhone or iPad,~~ found at the Premises for the purpose of attempting to unlock the device ~~via Touch ID~~ in order to search the contents as ~~authorized by this warrant.~~

### Search Procedure

3.   The search for data capable of being read, stored, or interpreted by a computer or storage device, may require authorities to employ techniques, including imaging any computer or storage media and computer-assisted scans and searches of the computers and storage media, that might expose many parts of the computer to human inspection in order to determine whether it constitutes evidence as described by the warrant.

4.   The initial examination of the computer and storage media will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

5.   If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the computer and storage media do not contain any data falling within the scope of the warrant, they will not search or

examine those files or folders further without authorization from the Court.  Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

6. If an examination is conducted, and the computer and storage media do not contain any data falling within the ambit of the warrant, the government will return the computer and storage media to its owner within a reasonable period of time following the search and will seal any image of the computer and storage media, absent further authorization from the Court.

7. The government may retain the computer and storage media as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the computer and storage media and/or the data contained therein.

8. The government will retain a forensic image of the computer and storage media for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.